UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

EARL DAVID MAXWELL
and DIANNE M. MAXWELL,

  Debtors.
_____/

AVIS RENT A CAR SYSTEMS, INC.,

  Plaintiff,

vs.

EARL DAVID MAXWELL,

  Defendant.
_____/

Case No. 6:04-bk-10549-ABB
Chapter 7

**FILED**

DEC 1 5 2005

CLERK, U.S. BANKRUPTCY
ORLANDO DIVISION

Adv. Pro. No. 6:04-ap-0268-ABB

## MEMORANDUM OPINION

This adversary proceeding came before the Court on the Complaint to Deny Dischargeability of Debt[1] filed by the Plaintiff Avis Rent A Car Systems, Inc. ("Plaintiff" or "Avis") against Earl David Maxwell, the Defendant and a Debtor herein ("Debtor"). This is an action to determine the dischargeability of a debt pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6). A trial was held on September 27, 2005. Appearing at trial were the Plaintiff, the Debtor, and counsel for each party. After reviewing the pleadings and evidence, and hearing live testimony and argument, being otherwise fully advised in the premises, the Court finds that there is no basis to except the debt from the Debtor's discharge. Judgment will be entered for the Debtor.

The following Findings of Fact and Conclusions of Law are made:

---

[1] Doc. No. 1.

## FINDINGS OF FACT

The Debtor and his wife filed a joint Chapter 7 bankruptcy case on September 23, 2004. The Debtor graduated from law school in 1967 and is an attorney licensed to practice law in Florida. He practiced law for many years with various firms. The Debtor owns an interest in a business, NoniMax International, Inc. ("NoniMax"), a juice product distributor licensee. Avis is listed as a creditor in the Debtor's Schedule F holding a disputed claim against the Debtor individually in the amount of $234,954.84.

A number of individuals who held themselves out as government officials of the "Federal Republic of Nigeria" including the "oil ministry" (collectively, the "Nigerian Nationals"), contacted the Debtor in early 2000. The Nigerian Nationals informed the Debtor they were seeking business investment opportunities in the United States. They proposed to send to the Debtor the sum of $27.5 million (U.S.), which would be deposited into a NoniMax account to be disbursed by the Debtor for various investments in accordance with the Nigerian Nationals' instructions. The Debtor was to receive a percentage of the invested funds, at least 15%, as compensation. The Debtor retained legal counsel in Nigeria to represent his interests. He did not contact any United States government official, law enforcement agency or attorney to determine the legality of the investment proposal.

The Debtor had numerous written and oral communications with the Nigerian Nationals throughout 2000 and 2001, including traveling to Canada to meet with a contact. The Nigerian Nationals made several requests for the Debtor to advance costs for documentation to complete the $27.5 million transaction. He spent approximately $60,000 in fees and expenses.

The Debtor refused to send any additional money to the Nigerian Nationals after more than a year had passed and the $27.5 million was not forthcoming. The Debtor, now frustrated, demanded full reimbursement of the monies he had spent and wanted to terminate the relationship. The Nigerian Nationals told the Debtor that Avis was indebted to the Nigerian government and a check drawn on an Avis account would be used to reimburse his costs and compensate him for his efforts. They explained a check payable to the Debtor, from Avis, would arrive via the mail.

The Debtor received a check (the "Check") payable to "F. David Maxwell" drawn on an Avis account with Bank of America in the amount of $234,954.84 on or about March 26, 2001. The Check, under the payee name, contained the Debtor's home address of "1583 E. Silver Star Road #333, Ocoee, Florida 34761."[2] The payee name and address were printed on the Check in the same font. The Check was sent in a United States Postal Express Mail package listing "John Maxwell" of 1996 Jefferson Boulevard, Los Angeles, California 90018 as the sender. The Debtor does not know a person named "John Maxwell"[3] or anyone at the return address. He did not communicate with or attempt to communicate with the sender "John Maxwell." The Debtor has never used the name nor been known as "F. David Maxwell."

The Debtor confirmed receipt of the Check with his Nigerian contacts and deposited it into his attorney trust account, titled "E. David Maxwell, Attorney at Law, Trust Account" Account No. 3391044359, at AmSouth Bank. The Debtor endorsed the Check "For Deposit 3391044359."[4] The Check was paid by Bank of America from Avis' account. No attorney

---

[2] Plaintiff's Exhibit No. 4.
[3] The Debtor testified that there is a Christian writer named "John Maxwell," but provided no evidence he was expecting a package from him, that he had ever communicated with him, or that he believed the package was actually from such person.
[4] Plaintiff's Exhibit No. 4.

3

client relationship existed between the Debtor and any Nigerian national or Nigerian entity. The funds were to be deposited into a NoniMax account, according to the Debtor's arrangements with the Nigerian Nationals. The Debtor did not give any clear reason why he deposited the funds into his trust account instead of a NoniMax account.

The Debtor disbursed the funds in accordance with the written instructions from a Nigerian contact named "Dr. Asiodu" dated April 4, 2001, after the check cleared, including a disbursement of approximately $100,000 to the Debtor for cost reimbursement ($60,000) and fees earned ($40,000). The Debtor transferred the balance of the funds, pursuant to the written instructions, to accounts in Lebanon and Nigeria.

The Check was generated by Avis on and dated March 15, 2001. The original payee of the Check was "Ultramar, Inc.," a regular fuel-supplier vendor of Avis. The Check was altered to change the payee from "Ultramar, Inc." to "F. David Maxwell" after it was generated by Avis. It has not been determined who altered the Check. Avis did not learn that the Check had been altered and negotiated until Ultramar, Inc. made demand upon Avis for payment of overdue invoices in August 2001. The Check had been altered because there is a space between "FL" and the zip code 34761; a non-altered check generated by Avis' accounting software would have no space separating the state and zip code.

Avis requested Bank of America return the funds to Avis' account pursuant to the Deposit Agreement and Disclosures between Avis and Bank of America. Bank of America made a claim against AmSouth Bank for breach of warranty. AmSouth ultimately denied the claim stating the request was untimely pursuant to the controlling provisions of Georgia state law. Avis delivered a $234,954.84 replacement check payable to Ultramar, Inc. on or about

4

November 30, 2001 and made demand upon the Debtor for return of the funds. The Debtor has not returned any of the funds to Avis. Avis holds a general unsecured claim against the Debtor in the amount of $234,954.84. The Debtor cooperated with the Secret Service after an investigation into the Nigerian Nationals was opened.

The Debtor did not contact Avis to determine if Avis intended the funds be sent to him or if Avis owed a debt to the Nigerian Nationals. The Debtor did not perform services for or for the benefit of Avis. Despite the circumstances surrounding the Check, the Debtor cashed the check and disbursed the funds. The Debtor claims he believed the Nigerian National's investment proposition was a legitimate business venture. He believed he was entitled to negotiate the Check when he received it. His belief was based upon: (i) The payee's name on the Check matched his name almost exactly. (ii) The Check contained his home address. (iii) It was not apparent from the face of the Check that it had been altered. (iv) The details of the Check and its delivery were consistent with what the Nigerian Nationals communicated to him.

The Debtor should have been more skeptical of the Nigerian Nationals by the time he received the Check. The Debtor had been interacting with the Nigerian Nationals for over a year, with their business investment promises still unfulfilled, when the Check arrived. The notoriety of Nigerian business scams is widespread. Victims have been duped by sham Nigerian business deals since the early 1980s. The Google search engine identifies over 1,080,000 relevant web pages relating to "Nigerian business scams." Nigerian business scams are even the subject of comedy routines. In a recent appearance on The Daily Show, comedian Lewis Black

chided a movie producer as being utterly gullible and told him. "I know a Nigerian banker who wants your email address."[5]

Apparently, the Debtor was gullible. He, naively, did not appreciate the true nature of the business venture and fell prey to the Nigerian Nationals' fraud. Perhaps others standing in the Debtor's shoes would have exercised greater care and been more circumspect. Perhaps the Debtor could have exercised greater care. The Debtor, however, did make some attempt to protect himself by hiring counsel in Nigeria and insisting on meeting with a Nigerian National in Canada.

A plaintiff's burden of proof in a nondischargeability action is substantial. Avis must establish the Debtor's specific intent in order to prevail under either count of its Complaint. The Debtor testified he believed he was entitled to negotiate the Check and his testimony, based upon the totality of the evidence, was credible. The Debtor did not harbor the intent to deceive or injure Avis, even if he may have been gullible, naïve, or even careless. Avis has not established the Debtor made a false representation with the intent to deceive Avis, that it justifiably relied on any misrepresentations made by the Debtor or that its damages were proximately caused by a misrepresentation by the Debtor. Avis has not established that the Debtor cashed the Check with the intent to harm Avis nor that the debt arises from a willful and malicious injury.

## CONCLUSIONS OF LAW

Avis challenges the dischargeability of the debt in the amount of $234.954.84 pursuant to Sections 523(a)(2)(A) and 523(a)(6). The party objecting to the dischargeability of a debt carries the burden of proof and the standard of proof is preponderance of the evidence. Grogan v.

---

[5] *The Daily Show: Lewis Black "Wal-Mart" segment* (Comedy Central television broadcast November 9, 2005).

Garner, 498 U.S. 279, 291, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991); Fed. R. Bankr. P. 4005 (2005). Objections to discharge are to be strictly construed against the creditor and liberally in favor of the debtor. In re Hunter, 780 F.2d 1577, 1579 (11th Cir. 1986); In re Bernard, 152 B.R. 1016, 1017 (Bankr. S.D. Fla. 1993). "Any other construction would be inconsistent with the liberal spirit that has always pervaded the entire bankruptcy system." 4 COLLIER ON BANKRUPTCY ¶523.05, at 523-24 (15th ed. rev. 2005).

### *11 U.S.C. § 523(a)(2)(A)*

Avis contends the debt should be excepted from discharge pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, which provides a discharge pursuant to § 727 does not discharge an individual from any debt:

> for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523(a)(2)(A). Courts have required a plaintiff to establish the traditional elements of common law fraud to prevail in a Section 523(a)(2)(A) action. SEC v. Bilzerian (In re Bilzerian), 153 F.3d 1278, 1281 (11th Cir. 1998). A plaintiff must establish: (i) the debtor made a false representation with the purpose and intent to deceive the creditor; (ii) the creditor relied on the misrepresentation; (iii) the reliance was justified; and (iv) the creditor sustained a loss as a result of the misrepresentation. Id.; In re Johannessen, 76 F.3d 347, 350 (11th Cir. 1996). "A plaintiff must prove that the debtor's conduct involved actual fraud—either moral turpitude or intentional wrong on the debtor's part" to prevail in a Section 523(a)(2)(A) action. In re DeLisle, 125 B.R. 310, 312 (Bankr. M.D. Fla. 1991). Pursuant to the Grogan decision, the objecting party

must establish each of the four elements of fraud by a preponderance of the evidence. In re Wiggins, 250 B.R. 131, 134 (Bankr. M.D. Fla. 2000).

The false representation giving rise to the claim must have been knowingly and fraudulently made to except a debt from discharge. 4 COLLIER ON BANKRUPTCY ¶523.08[1][d]. at 523-44.9. A plaintiff must establish the debtor intended to deceive the plaintiff through the false representation. In re Stevens, No. 02-8501-8G7, Adv. No. 8:02-ap-589-PMG, 2003 Bankr. LEXIS 1950. at 14 (Bankr. M.D. Fla. September 12, 2003). Intent is a subjective issue requiring the court to "examine the totality of the Debtor's actions to determine if [he] possessed the requisite intent to deceive the Plaintiffs." Id. (quoting In re Copeland, 291 B.R. 740, 766 (Bankr. E.D. Tenn. 2003)). The party objecting to discharge must then establish that *it* relied on the false representation. Id.; City Bank & Trust Co. v. Vann, (In re Vann), 67 F.3d 277, 280 (11th Cir. 1995); In re Perkins, 52 B.R. 355, 357 (Bankr. M.D. Fla. 1985). A creditor cannot establish non-dischargeability pursuant to § 523(a)(2)(A) without proof of reliance. In re Perkins. 52 B.R. at 357.

The reliance upon the debtor's false representation must be justified. Field v. Mans. 516 U.S. 59, 73-5, 116 S. Ct. 437, 133 L. Ed. 2d 351 (1995) (establishing that § 523(a)(2)(A) requires justifiable reliance rather than the former standard of reasonable reliance). Whether such reliance was justified is determined by a subjective test. In re Vann, 67 F.3d at 281. "Justifiable reliance is gauged by an *individual standard* of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case." Id. (quoting W. PAGE KEETON, PROSSER & KEETON ON TORTS §108. at 751 (5th ed. 1984) (emphasis added)). A plaintiff must establish a causal link

between the debtor's misrepresentation and the resulting loss sustained by the plaintiff. In re Stevens, 2003 Bankr. LEXIS 1950, at 18-9.

The Plaintiff has not established the fraud elements for non-dischargeability pursuant to Section 523(a)(2)(A). Specifically, the Plaintiff has not established the first element of fraud, that the Debtor made a misrepresentation with the intent to deceive Avis. In construing all of the facts in favor of the Debtor, Avis has not established by a preponderance of the evidence that the Debtor made a misrepresentation when he negotiated the Check and that he negotiated the Check with the specific intent to deceive Avis. The Debtor believed he was entitled to negotiate the Check. Avis did not establish the Debtor's belief was otherwise.

Several facts support the Debtor's contention. The payee name printed on the Check was almost identical to his name. His home address was printed on the Check. Nothing on the face of the Check indicated it had been altered. The details of the Check and its delivery were consistent with what the Nigerian Nationals had communicated to him. The Debtor, following the Nigerian Nationals' instructions, kept only a portion of the funds. He retained funds to recover his out-of-pocket costs plus roughly 15% of the amount disbursed for compensation, consistent with the agreed upon compensation range.

The Plaintiff has failed to establish the second and third elements of fraud, that it relied on the Debtor's misrepresentation and such reliance was justified. Avis states in its papers[6] "Avis, through its representatives, reasonably relied on the representations and suffered damages as a result," but presented no evidence establishing reliance. AmSouth Bank and Bank of America, not Avis, may have relied on the Debtor's representation that he was entitled to the Check. Finally, without establishing the first three elements of fraud, the Plaintiff cannot

establish the causation element. The Plaintiff has failed to establish the non-dischargeability of the debt pursuant to 11 U.S.C. § 523(a)(2)(A).

## *11 U.S.C. § 523(a)(6)*

Avis asserts a cause of action pursuant to Section 523(a)(6) of the Bankruptcy Code. Section 523(a)(6) provides a discharge pursuant to § 727 does not discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The exception of a debt from discharge pursuant to § 523(a)(6) requires a plaintiff to establish by a preponderance of the evidence the debtor deliberately and intentionally injured the creditor or creditor's property by a willful and malicious act. In re Howard, 261 B.R. 513, 520 (Bankr. M.D. Fla. 2001). A plaintiff cannot prevail on a Section 523(a)(6) count without establishing the debtor's intent. In re Lammers, No. 6:02-bk-08758-ABB, Adv. No. 6:02-ap-00334-ABB, 2005 Bankr. LEXIS 1181, at 6 (Bankr. M.D. Fla. June 9, 2005).

The United States Supreme Court ruled in Kawaauhau v. Geiger that in order to establish the requisite willful and malicious intent of § 523(a)(6), a plaintiff must establish the injury was intentional—that the debtor intended the consequences of his or her act. The Supreme Court explained, because "willful" modifies "injury" in § 523(a)(6), nondischargeability requires conduct that inflicts an injury intentionally and deliberately, "not merely . . . a deliberate or intentional *act* that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61-2, 118A S. Ct. 974, 140 L. Ed. 2d 90 (1998).

A plaintiff must establish the injury was malicious after establishing willful injury. In re Uhrig, 306 B.R. 687, 699 (Bankr. M.D. Fla. 2004). "Malicious" has been defined by the Eleventh Circuit as "wrongful and without just cause or excessive even in the absence of

---

[6] Doc. No. 29.

personal hatred, spite or ill-will." In re Ikner, 883 F.2d 986, 991 (11th Cir. 1989). Malice may be implied or constructive. In re Walker, 48 F.3d 1161, 1164 (11th Cir. 1995). Conduct that is reckless or willfully ignorant does not constitute malicious and willful pursuant to the Geiger standard. In re Ikner, 883 F.2d at 991. There must be "a showing of an intentional or deliberate act, which is not done merely in reckless disregard of the rights of another." Id.; *see also* In re Walker, 48 F.3d at 1165 (explaining that the "reckless disregard" standard was rejected by Congress and the 11th Circuit Court of Appeals). A plaintiff's burden of proof in a § 523(a)(6) action is significant.

Avis contends the negotiation of the Check by the Debtor and subsequent disbursement of funds, constitute a willful and malicious injury to Avis. Avis has not established the Debtor acted with the requisite bad intent, in construing the facts liberally in favor of the Debtor. The Plaintiff has not established that the Debtor's actions meet the willful and malicious standard of § 523(a)(6), as defined by the Supreme Court in Geiger. The Debtor's intent is the cornerstone element of § 523(a)(6) and without proof of intent the Plaintiff cannot prevail in its § 523(a)(6) count.

The facts that mitigate against a finding of willful and malicious injury and support the Debtor's account of his intent include: The Debtor received a check made payable to "F. David Maxwell," which matches his name exactly if one small line is added to the "F." The check contained the Debtor's home address. It was not apparent from the face of the Check, except to an Avis employee with knowledge of Avis' check-writing practices, that the Check had been altered. The details of the Check and its delivery were consistent with what the Nigerian Nationals told the Debtor. The Debtor did not make a false endorsement on the Check; he

11

endorsed the Check "For Deposit 3391044359." He did not retain all of the funds for himself, but kept only a portion of the funds as instructed. The Debtor retained funds to recover his out-of-pocket costs plus roughly 15% of the disbursed amount for compensation, consistent with the agreed upon compensation range. The Debtor testified that he believed he was entitled to negotiate the Check. His testimony, based upon the totality of the evidence, was credible.

The Debtor may have been willfully ignorant, even reckless, in his actions regarding the Check, as Avis argues. Neither willful ignorance nor recklessness meet the willful and malicious standard of § 523(a)(6). Likewise, naiveté does not meet the willful and malicious standard. Avis made conclusory statements in its papers and at trial that the Debtor's actions were malicious and willful. These conclusory allegations do not substitute for required proof of actual conscious intent to harm. The Plaintiff has not established, through specific and sufficient evidence, that the Debtor's actions rise to the level of willful and malicious to satisfy the requirements of § 523(a)(6) and Geiger.

*Conclusion*

The Plaintiff was required to establish by a preponderance of the evidence, to prevail under both counts of its Complaint, that the Debtor acted with a specific intent. The Court is bound by the controlling case law, which sets a high burden of proof for the Plaintiff. The Court has a responsibility to construe the facts liberally in favor of the Debtor and strictly against the Plaintiff. Avis was required to establish the Debtor acted with the actual intent to deceive Avis for its § 523(a)(2)(A) count and the Debtor intentionally acted to harm Avis for its § 523(a)(6) count. The Plaintiff cannot establish the elements of either count of its Complaint without establishing the intent of the Debtor.

Intent is a purely subjective issue requiring the Court to examine the totality of the facts. Any benefit of the doubt must tip the scales in favor of the Debtor. The Debtor testified that his intentions were good—that he did not intend to deceive or injure Avis and believed he was entitled to negotiate the Check. No evidence was presented establishing that the Debtor harbored the requisite bad intent. The totality of the evidence, viewed in the light most favorable to the Debtor, indicates the Debtor believed he could negotiate the Check. Even if the Debtor may have been gullible and naïve, he did not harbor bad intent towards Avis.

The scales tip in favor of the Debtor. The Plaintiff has failed to establish the elements of 11 U.S.C. §§ 523(a)(2)(A) or 523(a)(6) and the debt is not entitled to be excepted from discharge. Judgment will be entered in favor of the Debtor.

The Court will enter a separate judgment consistent with these findings of fact and conclusions of law.

Dated this 15th day of December, 2005.

ARTHUR B. BRISKMAN
United States Bankruptcy Court